**Ex parte Jaime Alberto MARTINEZ**

No. 2–96–250–CR.

Court of Appeals of Texas,
Fort Worth.

Feb. 27, 1997.

J.R. Molina, Fort Worth, for appellant.

Tim Curry, Criminal District Attorney, Charles M. Mallin, Chief of the Appellant Section, Debra Ann Windsor and Jeff Cureton, Assistant Criminal District Attorneys, Fort Worth, for appellee.

Before CAYCE, C.J., and DAY and LIVINGSTON, JJ.

## OPINION

PER CURIAM.

Appellant Jaime Alberto Martinez is awaiting trial in County Criminal Court No. 8 of Tarrant County, Texas on a misdemeanor information charging him with driving while intoxicated (DWI).[1] Martinez filed a pretrial application for writ of habeas corpus, in which he alleged that the double jeopardy protections of the federal and state constitutions bar his trial. After a hearing, the trial court denied the requested relief. In two points of error, Martinez contends the trial court improperly denied his application. We affirm.

On April 23, 1995, Martinez was arrested in Tarrant County for DWI. At the time of the arrest, Martinez was asked to submit to a breath test but refused. On April 25, 1995, Martinez was charged with DWI. In addition, because Martinez had refused to submit to a breath test, the Texas Department of Public Safety (DPS) notified him that his license would be suspended.[2] Martinez requested a hearing on this matter,[3] which was held on June 2, 1995. At the hearing, the administrative law judge denied the DPS's petition to suspend Martinez's driver's license. The administrative law judge found that Martinez, who is primarily Spanish-speaking, was not properly asked to take a breath test.

On May 13, 1996, Martinez filed his first amended application for writ of habeas corpus. In the application, Martinez asserted he had been acquitted when his license was not suspended, and that a subsequent prosecution for DWI was barred by double jeopardy. Accordingly, Martinez asked the trial court to dismiss the information. At the hearing on Martinez's application, the State and the defense stipulated that he had been charged with DWI and that his license had not been suspended. The trial court denied habeas relief, and Martinez appealed.

Martinez asserts his DWI trial will result in a second prosecution after an acquittal, in violation of the double jeopardy protections of the federal and state constitutions.

■ The double jeopardy clauses of the United States Constitution and the Texas Constitution protect against three abuses: (1) a second prosecution for the same offense after acquittal; (2) a second prosecution for the same offense after conviction; and (3) multiple punishments for the same offense. *North Carolina v. Pearce*, 395 U.S. 711, 717, 89 S.Ct. 2072, 2076, 23 L.Ed.2d 656, 664–65 (1969); *Ex parte Vasquez*, 918 S.W.2d 73, 74 (Tex.App.—Fort Worth 1996, pet. ref'd). In determining whether two statutes constitute the same offense for double jeopardy purposes, we rely on the "same elements" test enunciated in *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932). The same elements test involves determining whether each statutory provision under which a defendant would be prosecuted requires proof of a fact that the other does not. *Id.* at 304, 52 S.Ct. at 182, 76 L.Ed. at 309. Also under this test, two statutes define different offenses when "each provision requires proof of an additional fact which the other does not." *Id.* When applying the same elements test, our double jeopardy analysis must focus on the elements alleged in the charging instrument and not merely on the penal statute. *Parrish v. State*, 869 S.W.2d 352, 354 (Tex.Crim.App. 1994) (citing *United States v. Dixon*, 509 U.S. 688, 696, 113 S.Ct. 2849, 2856, 125 L.Ed.2d 556, 573 (1993)).

■ In this case, the DPS's notice of the license suspension hearing alleged that, on or about April 23, 1995:

---

1. *See* Act of May 29, 1993, 73rd Leg., R.S., ch. 900, § 1.01, 1993 Tex. Gen. Laws 3586, 3697, *amended by* Act of April 21, 1995, 74th Leg., R.S., ch. 76, § 14.55, 1995 Tex. Gen. Laws 460, 841 (current version at Tex. Penal Code. Ann. § 49.04(a) (Vernon Supp.1997)).

2. *See* Acts of May 29, 1993, 73rd Leg., R.S., chs. 886, § 9, 900, § 1.10, 1993 Tex. Gen. Laws 3523, 3524, 3703, *repealed by* Act of May 1, 1995, 74th Leg., R.S., ch. 165, § 1, 1995 Tex. Gen. Laws 1025, 1871 (current version at Tex. Transp. Code Ann. §§ 724.032–.033 (Vernon Pamph.1997)).

3. *See* Act of May 29, 1993, 73rd Leg., R.S., ch. 886, § 9, 1993 Tex. Gen. Laws 3523, 3525 (repealed 1995) (current version at Tex. Transp. Code Ann. § 724.041 (Vernon Pamph.1997)).

- there existed reasonable suspicion to stop Martinez or probable cause to arrest him;

- probable cause existed that Martinez was driving or in actual physical control of a motor vehicle in a public place while intoxicated;

- Martinez was placed under arrest and was offered an opportunity to give a specimen of breath or blood under the provisions of TEX.REV.CIV. STAT. ANN. art. 6701l–5;[4] and

- Martinez refused the officer's request to give a specimen.

The information in the DWI proceeding alleges that, on or about April 23, 1995:

- Martinez drove and operated a motor vehicle in a public place

- while he was intoxicated by not having the normal use of his mental and physical faculties by reason of the introduction of alcohol into his body.

Martinez contends the statute governing the administrative license suspension proceeding for refusal to take a breath test and the DWI statute constitute the "same offense" for double jeopardy purposes. The

Court of Criminal Appeals recently held that the administrative license suspension procedure and a subsequent prosecution for DWI constitute the same offense for double jeopardy purposes. *See Voisinet v. State*, 935 S.W.2d 424, 425–26 & n. 2 (Tex.Crim.App. 1996). *Voisinet* does not apply to this case, however, because *Voisinet* involves a comparison of the elements of former article 6687b–1, § 7(b) with the elements of DWI set forth in section 49.04(a) of the Texas Penal Code. *See id.* at 425–26.[5] In this case, DPS sought to suspend Martinez's license under former article 6701l–5, not under article 6687b–1. The elements DPS had to prove to obtain a license suspension under article 6687b–1 are different from the elements DPS had to prove to obtain a license suspension under article 6701l–5.[6] Further and more importantly, former article 6701l–5 contains elements that the DWI statute does not. *Cf.* TEX. TRANSP. CODE ANN. § 724.042 (cited in footnote 6) *with* TEX. PENAL CODE ANN. § 49.04(a).[7]

We have previously held that the elements of former article 6701l–5 and the DWI statute, as alleged by the DPS and the State in this case, do not constitute the same offense for double jeopardy purposes. *Vasquez*, 918

**4.** Act of May 24, 1969, 61st Leg., R.S., ch. 434, 1969 Tex. Gen. Laws 1468, 1468–70, *amended by* Act of May 29, 1993, 73rd Leg., R.S., ch. 886, § 9, 1993 Tex. Gen. Laws 3523, 3523–24, 3525, *repealed by* Act of May 1, 1995, 74th Leg., R.S., ch. 165, § 1, 1995 Tex. Gen. Laws 1025, 1871 (current version at TEX. TRANSP. CODE ANN. §§ 724.011–.013, 724.015, 724.042 (Vernon Pamph.1997)).

**5.** To suspend a person's driver's license under article 6687b–1, § 7(b), DPS had to prove that:
- the person had a blood alcohol concentration of 0.10 or more;
- while driving or in actual physical control of a motor vehicle;
- in a public place; and
- reasonable suspicion to stop or probable cause to arrest the person existed.

Act of May 29, 1993, 73rd Leg., R.S., ch. 886, § 1, 1993 Tex. Gen. Laws 3515, 3518, *repealed by* Act of May 1, 1995, 74th Leg., R.S., ch. 165, § 1, 1995 Tex. Gen. Laws 1025, 1871 (current version at TEX. TRANSP. CODE ANN. § 524.035 (Vernon Pamph.1997)). These requirements did not change substantively with the statute's recodification in the Texas Transportation Code.

**6.** To suspend a person's driver's license under former article 6701l–5, DPS had to prove that:

- reasonable suspicion or probable cause existed to stop or arrest the person;
- probable cause existed to believe the person was operating a motor vehicle in a public place while intoxicated;
- the person was placed under arrest by the officer and was asked to submit to the taking of a specimen; and
- the person refused to submit to the taking of a specimen on request of the officer.

Act of May 29, 1993, 73rd Leg., R.S., ch. 886, § 9, 1993 Tex. Gen. Laws 3523, 3525 (repealed 1995). These requirements did not change substantively with the statute's recodification in the Texas Transportation Code and are currently set out in TEX. TRANSP. CODE ANN. § 724.042 (Vernon Pamph.1997). *Cf.* these elements *with* those set out in footnote 5.

**7.** A person commits the offense of DWI if the person:

- is intoxicated;
- while operating a motor vehicle;
- in a public place.

TEX. PENAL CODE ANN. § 49.04(a) (Vernon Supp. 1997).

S.W.2d at 74–75. Thus, a DWI prosecution following the license suspension hearing at which Martinez's driver's license was suspended will not violate the federal and state constitutional protections against double jeopardy. *Id.* at 75.

■ In addition, the double jeopardy prohibition does not apply here because Martinez was not placed in jeopardy at the license suspension proceeding.

In *Breed,* the United States Supreme Court focused on the type of proceeding that will put a person in jeopardy so as to bar a later prosecution. The Court noted that jeopardy refers to the risk traditionally associated with a criminal prosecution and is not present in proceedings that are not "essentially criminal." *Breed v. Jones,* 421 U.S. 519, 528, 95 S.Ct. 1779, 1785, 44 L.Ed.2d 346, 354–55 (1975). The *Breed* Court held that juvenile adjudicatory proceedings are essentially criminal in nature because the object of these proceedings is to determine whether the juvenile violated a criminal law. In addition, potential consequences of the proceeding are the deprivation of liberty for many years and the stigma inherent in the court's determination. *Id.* at 529, 95 S.Ct. at 1785, 44 L.Ed.2d at 355.

Unlike a juvenile adjudicatory proceeding, a license suspension hearing does not put a person in jeopardy so as to bar later prosecution. A license suspension hearing is not "essentially criminal." To the contrary, we have held that a license suspension hearing is administrative and civil in nature. *Ex parte Tharp,* 912 S.W.2d 887, 891, 894 (Tex.App.—Fort Worth 1995), *aff'd,* 935 S.W.2d 157 (Tex. Crim.App.1996); *see also* TEX. TRANSP. CODE ANN. § 724.048 (Vernon Pamph.1997) (administrative law judge's determination at license suspension hearing is a civil matter and does not preclude litigation of same or similar facts in a criminal prosecution).

■ In addition, the primary purpose of a license suspension proceeding is not to determine whether an individual has violated a criminal law. Rather, its primary purpose is remedial—"to protect the public from the

carnage on the public roads of Texas caused by drunk drivers." *Tharp v. State,* 935 S.W.2d at 159; *accord Ex parte Tharp,* 912 S.W.2d at 891, 894. The double jeopardy clause does not bar both a remedial civil proceeding and a criminal prosecution based on the same offense. *State v. Solar,* 906 S.W.2d 142, 146 (Tex.App.—Fort Worth 1995, pet. ref'd); *see also One Lot Emerald Cut Stones v. United States,* 409 U.S. 232, 235–36, 93 S.Ct. 489, 492, 34 L.Ed.2d 438, 442 (1972) (per curiam) (Congress may impose both a civil and a criminal sanction for the same act or omission; double jeopardy clause merely prohibits attempting to punish criminally for same offense); *Malone v. State,* 864 S.W.2d 156, 159 (Tex.App.—Fort Worth 1993, no pet.) (trial for termination of parental rights is a civil proceeding with a remedial result—protecting abused and neglected children—and does not trigger jeopardy bar to subsequent criminal prosecution for aggravated sexual assault of child); *accord Ex parte Cantu,* 913 S.W.2d 701, 705–06 (Tex. App.—San Antonio 1995, pet. ref'd).

Finally, a license suspension hearing results, at most, in the temporary suspension of a person's driver's license, not in many years' deprivation of liberty. *Tharp,* 912 S.W.2d at 890; *see also* TEX. TRANSP. CODE ANN. § 724.035 (Vernon Pamph.1997) (period of license suspension can range from 90 days to one year).[8] In addition, a person whose license has been suspended may apply for an occupational license during part or all of the suspension period. *See* TEX. TRANSP. CODE ANN. §§ 521.241–.242, 521.251 (Vernon Pamph.1997).

Because the elements of the license suspension statute and the DWI statute alleged in this case are not the "same offense" for double jeopardy purposes, and because a license suspension hearing does not place an individual in jeopardy, we overrule Martinez's two points of error. The trial court's denial of habeas relief is affirmed.

---

**8.** The statute in effect at the time of Martinez's license suspension hearing provided for an identical range of suspension periods. *See* Act of May 29, 1993, 73rd Leg., R.S., ch. 886, § 9, 1993 Tex. Gen. Laws 3523, 3525 (repealed 1995) (current version at TEX. TRANSP CODE. ANN. § 724.035)).